IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

| | |
|---|---|
| DONIKA JOSIFI<br>c/o Unit 5740 Box 75<br>DPO AE 09750-0075<br><br>and<br><br>CLYDE JOSIFI<br>c/o Unit 5740 Box 75<br>DPO AE 09750-0075<br><br>    Plaintiffs,<br>v.<br><br>MARRIOTT INTERNATIONAL, INC.<br>10400 Fernwood Road<br>Bethesda, Maryland 20817<br><br>SERVE: CSC-Lawyers Incorporating Service Co.<br>    7 St. Paul Street, Suite 820<br>    Baltimore, MD. 21202<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Civil Action No. _____<br>JURY TRIAL IS DEMANDED |

## COMPLAINT AND JURY DEMAND

Plaintiffs Donika Josifi and Clyde Josifi ("Plaintiffs"), by and through their undersigned

counsel, bring this action against Defendant Marriott International, Inc. ("Marriott"), and allege as

follows:

## PARTIES

1.    Plaintiff Donika Josifi, ("Ms. Josifi") is  a citizen of the Commonwealth of Virginia.

At all relevant times she has been employed by the United States Department of Justice as an

Administrative Specialist stationed at the United States Embassy in Sofia, Bulgaria.

2.      Plaintiff, Clyde Josifi ("Mr. Josifi") is the spouse of Plaintiff Donika Josifi and a citizen of the Commonwealth of Virginia. At all relevant times he has been residing with his spouse, Ms. Josifi, in Sofia, Bulgaria.

3.      Defendant Marriott International, Inc. is a Delaware corporation with its principal place of business located at 10400 Fernwood Road, Bethesda, Maryland 20817.

## JURISDICTION AND VENUE

4.      Pursuant to 28 U.S.C. § 1332(a), this court enjoys diversity jurisdiction and the amount in controversy exceeds $75,000.00, exclusive of interest and costs; the action is between citizens of different states.

5.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (c), because Defendant resides and conducts substantial business in this District.

6.      Personal jurisdiction exists over Defendant because it maintains its principal place of business in this District.

## FACTS COMMON TO ALL CLAIMS

### The Marriot Hotel, Tirana, Albania

7.      On March 6, 2023, Defendant Marriott International announced the opening of the Tirana Marriot Hotel, Tirana, Albania ("Hotel"), as "the first Marriott Hotel in the Balkan country of Albania."

8.      On the date of the injury at issue, November 15, 2023, Mr. Cem Cevik was Defendant's Director of Operations of its Hotel. Mrs. Sanem Ozdemir was its Front Office Manager. Their respective business cards, which they handed to Ms. Josifi during their interaction with her while she was lying on the marble floor where she slipped, identify each as a Mariott employee.

2

9.      On October 18, 2023, Ms. Klaudia Shima, Budget Analyst, Office of Defense Cooperation, US Embassy Tirana, Albania sent an email to the Marriott Hotel Reservation Team Tirana instructing the Tirana Marriott staff to reserve three rooms from November 13 to November 17, 2023, for Embassy staff. One of the rooms was for the Plaintiff Ms. Josifi. On November 1, 2023, the Marriott Hotel Reservation Team Tirana confirmed the reservation for Ms. Josifi by return email to Artan Sadiku, Education and Training Program Manager, Office of Defense Cooperation, US Embassy, Tirana, Albania. Under the terms of an agreement between the US Embassy and the Marriott Hotel in Tirana, each guest was to confirm and pay the Hotel directly.

**The Slip and Fall**

10.      On November 15, 2023, Ms. Josifi was a paying guest at the Tirana, Albania Marriott.  From the hotel lobby, guests were provided two unobstructed means of access to the breakfast area: a stairway on the right and an adjoining marble ramp on the left. Both routes were fully open and presented as available for guest use at approximately 7:10 a.m. local time on November 15, 2023.

11.      Without any warning, signage, barricade, or notice of hazard, Ms. Josifi proceeded toward and entered the ramp. Unbeknownst to her, the floor surface at the top of the ramp had just been mopped by Marriott's janitorial staff and remained wet.  The wetness of the area was not visible or easily noticed due to the surface's properties and the angle of approach. This made it difficult for guests using the ramp to detect the hazard when accessing the breakfast area.

12.      The Marriott janitorial maintenance employees failed to post warning signs and further failed to place any guests-sensitive physical barriers to alert guests to the wet floor at the top of the ramp, which, as noted, otherwise could not be observed.

3

13.     Defendant's Chief of its janitorial staff admitted to Ms. Josifi while in her hospital room, that cleaning of the lobby floor and ramp should have been completed before 6:00 AM, in accordance with Marriott's own safety protocols.

14.     As Ms. Josifi reached the top of the ramp, her right leg slipped on the floor causing a forceful and abrupt fall in which she landed on her left knee cap. As she fell, she noticed a janitorial worker in the immediate vicinity.  After falling, she noticed the wet floor and suspected serious knee injury due to severe pain and limited movement. Subsequently, she confirmed the fall caused three (3) fractures to her left knee cap.

15.      As she lay on the floor in excruciating pain, Mr. Cevik and Mrs. Ozdemir came to her aid and identified themselves by handing Ms. Josifi their Marriott business cards.

16.     The ramp's design and materials hid hazards, increasing risk. The ramp should have been closed and clearly marked while being mopped.

### Extent of Injuries and Medical Treatment

17.     Ms. Josifi's resulting injuries and pain were extreme. As she lay on the floor completely incapacitated and in excruciating pain, she wrapped her arms over her chest and remained in this position for the next six  hours, which included a lengthy wait for  the emergency medical team's arrival, transportation on a stretcher to an ambulance, the ambulance ride, and arrival at the emergency room in the hospital. Given her trauma and shock, she remained in the same position even though the hospital team examined her and took x-rays. The fall and injury required immediately cutting her clothes to examine the injury, anesthesia, and an emergency surgery.

18.     Ms. Josifi suffered a multi-fragmented patellar fracture; the immediate surgical intervention involved an open reduction and internal fixation with tension band wiring. The event and injury have become life altering for Plaintiffs.

19.     On May 16, 2024, at the Princess Grace Hospital in London, Ms. Josifi underwent removal of the implanted wires and surgical repair of rents in the quadriceps tendon. Operative reports noted dense scar tissue and significant tendon damage requiring repair.

20.     Post-operatively, despite some relief, she continued to suffer recurrent severe pain, quadriceps weakness, and inability to properly control her leg. Her physicians described her condition as "deeply disappointing" and confirmed profound wasting of the quadriceps muscle.

21.     Radiology and CT imaging confirmed a step-off deformity in the articular surface of the patella, causing painful "clunking" and instability with each step. Doctors explained this deformity contributes to ongoing pain, impaired mobility, and future risk of arthritis.

22.     Although Ms. Josifi undergoes regular physiotherapy and electromyographic stimulation, improvement has been minimal. Her physicians have emphasized that there is no mechanical reason left for her lack of quadriceps function, suggesting permanent nerve inhibition and muscular dysfunction.

23.     Even after multiple surgeries, Ms. Josifi continues to endure excruciating pain, stiffness, loss of mobility, and inability to safely navigate stairs or walk without assistance. She remains at risk of collapse due to quadriceps failure.

24.     These complications have devastated her daily life. She cannot walk independently, exercise, or drive. She faces constant fear of immobility in the event of emergencies. Her condition has robbed her of her independence, dignity, mental well-being, and enjoyment of life.

25.     Since the incident Ms. Josifi has undergone multiple hospital stays and extensive physical therapy, electromyostimulation, and ongoing pain management. Despite these treatments, her condition remains critical, with the certain prospect of at least two major additional surgeries, one orthopedic, the other neurological, because of nerve damage resulting from the fracture.

26.     Ms. Josifi continues to experience sharp, burning pain and tingling in her leg, mostly at night, with no relief. She experiences decreased sensation changes in the entire leg to include thigh, knee, and calf. This causes weakness in the knee and the entire leg, which makes going up and down stairs impossible. Her knee may suddenly give way, or buckle; her movement is severely impaired, and she requires assistance when trying to walk. She cannot walk without crutches.

### Quality of Life and Constant Threat to Her Wellbeing

27.     Ms. Josifi has an ongoing diplomatic career as an Administrative Specialist. Since November 23, 2023, she's been assigned to the Legal Attaché Office, Department of Justice, United States Embassy, Sofia, Bulgaria. As a result of the fall, she was forced to remain out of work for two and a half months. She was able to return to the office only because her husband had given up his own work to drive her to and from her place of employment and assist her with getting from their car into her office. This entailed him driving, holding her personal items, helping with crutches, and assisting her with walking up and down stairs/elevators.

28.     Ms. Josifi's impaired mobility places her at ongoing and serious risk of physical harm. In the event of an emergency requiring rapid evacuation, such as an earthquake or fire; she is unable to use stairways and cannot independently access emergency exits. She must instead rely upon the assistance of others to evacuate. This permanent limitation creates an ever-present and imminent threat to her personal safety in any public or private setting. It also subjects Ms. Josifi

and her husband to persistent fear, apprehension, and emotional distress arising from the reasonable concern that, in an emergency, she may be unable to evacuate promptly and safely.

**Permanent and Severe Impact on Plaintiffs' Quality of Life**

29.     The impact on Ms. Josifi's quality of life has been profound, pervasive, and enduring. She has been forced to miss annual preventive medical examinations with her established physicians in the United States because her injuries rendered her unable to fly. Her independence has been dramatically curtailed. She cannot ambulate without the assistance of a crutch, which severely restricts her ability to engage in ordinary and previously enjoyed activities such as walking in the park, traveling freely, or maintaining an active lifestyle. Her inability to navigate stairs without assistance, particularly in emergencies such as fires or earthquakes, has become a constant source of fear and anxiety for both Ms. Josifi and her husband. This persistent apprehension permeates their daily lives. She has also been unable to drive and is now wholly dependent upon her husband for transportation to medical appointments, work, and essential daily activities. As a direct consequence, her husband has been compelled to sacrifice significant portions of his personal and professional life to care for her, resulting in a substantial loss of income and further compounding the family's emotional and financial harm.

30.     The physical pain is compounded by the "step-off deformity" in her knee, noted above, which leads to pain, reduced joint function, and the potential for osteoarthritis and future surgical intervention.  As she grapples with the daily reality of a permanent and painful injury which has irrevocably altered her life, her corresponding emotional and mental distress is severe.

**Clyde Josifi's Loss of Consortium**

31.     As a result of the accident, Plaintiff Clyde Josifi has been forced to abandon his own professional pursuits to care for his wife, serving as her driver, physical support, and daily

caregiver. This has caused him significant financial loss and deprivation of his wife's society and companionship.

### Substantial and Ongoing Expenses

32.    The Josifis have incurred out-of-pocket medical expenses abroad exceeding $46,000 to date, with future expenses expected to reach several hundred thousand dollars, including anticipated surgeries, continued hospitalizations, therapy, and ongoing medical care.

33.    Plaintiffs demanded compensation, but Marriott has failed and refused to provide full and fair compensation.

### COUNT I
### Negligence (Plaintiff Donika Josifi)

34.    Defendant owed a nondelegable duty to exercise reasonable care to maintain its premises, including all ingress and egress routes to the breakfast area, in a condition that was safe for invitees such as Plaintiff on November 15, 2023.

35.    Plaintiff, a paying guest at the Defendant Hotel, was a business invitee and lawfully on the premises at the time of her injury.

36.    Defendant breached its duty of care by opening and maintaining the marble ramp and adjoining floor for guest use at approximately 7:10 a.m. while allowing a wet, slick, and hazardous condition to exist—without any warning, signage, barricade, cone, rope, or other form of notice to alert guests to the danger.

37.     Defendant further breached its duty by failing to close, block, or restrict access to the ramp during active and incomplete mopping operations, and by failing to provide any visible, conspicuous, or effective warning that the marble surface remained wet and slippery.

38.     Defendant further breached its duty by permitting guest access to the ramp before its janitorial staff had completed mopping and before the surface had dried, despite knowing that guests would necessarily traverse the ramp to reach the breakfast area during morning hours.

39.     Defendant further breached its duty by failing to comply with its own internal maintenance and safety protocols requiring cessation of mopping activities by 6:00 a.m., thereby allowing hazardous conditions to persist into active guest-use periods.

40.     The wet marble surface at the top of the ramp constituted a latent and concealed hazard. From the perspective of a reasonable invitee approaching from the bottom of the ramp, the dangerous condition was not open or obvious, and the design, slope, lighting, and polished marble materials of the ramp concealed and intensified the risk of slip and fall.

41.     As a direct and proximate result of Defendant's breaches and its complete failure to provide any notice or warning, Plaintiff slipped and fell, sustaining a multi-fragmented patellar fracture that required emergency surgical repair and subsequent medical procedures, leaving her with permanent impairment, chronic pain, loss of function, and substantial economic and non-economic damages.

WHEREFORE, Plaintiff Donika Josifi demands judgment against Defendant for compensatory damages in an amount to be determined at trial, including past and future medical expenses, lost wages and diminished earning capacity, pain and suffering, mental anguish, permanent impairment, loss of mobility, loss of enjoyment of life, pre- and post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT II
### Premises Liability (Plaintiff Donika Josifi)

42.     Plaintiff incorporates by reference Paragraphs 1–41 as if fully set forth herein.

43.     Defendant owned, operated, managed, and/or controlled the Hotel premises, including the lobby, stairs, ramp, and adjoining marble flooring leading to the breakfast area.

44.     Defendant owed Plaintiff, as a business invitee, a duty to use reasonable care to inspect, discover, correct, and/or warn of unreasonably dangerous conditions on the premises of which it knew or should have known.

45.     Defendant had actual or, alternatively, constructive notice of the hazardous wet condition on the marble ramp area due to its ongoing mopping operations and the presence of janitorial staff at the time of Plaintiff's approach.

46.     Despite such notice, Defendant failed to make the condition reasonably safe or to provide adequate warnings or barriers and allowed guest access to the ramp during active mopping operations.

47.     The hidden nature of the wet condition on the marble surface rendered the hazard not discoverable by Plaintiff exercising ordinary care from her vantage point at the bottom of the ramp.

48.     As a direct and proximate result of the dangerous condition and Defendant's failure to warn or remedy it, Plaintiff suffered the injuries and damage described herein.

WHEREFORE, Plaintiff, Donika Josifi, demands judgment against Defendant for compensatory damages in an amount to be determined at trial, including past and future medical expenses, lost wages and diminished earning capacity, pain and suffering, mental anguish, permanent impairment, loss of mobility, loss of enjoyment of life, pre- and post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT III
### Loss of Consortium (Plaintiff Clyde Josifi)

49.     Plaintiff incorporates by reference Paragraphs 1–51 as if fully set forth herein.

50.     As a direct and proximate result of Defendant's negligence toward his wife, Mr. Josifi has suffered the loss of his wife's society, companionship, affection, services, and aid, and has incurred economic losses associated with providing care and support.

51.     Mr. Josifi has been compelled to abandon his own professional pursuits to assist his wife with transportation, mobility, and daily activities, resulting in financial loss and ongoing deprivation of consortium.

WHEREFORE, Plaintiff, Clyde Josifi, demands judgment against Defendant for compensatory damages for loss of consortium in an amount to be determined at trial, together with pre- and post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

**Plaintiffs demand a trial by jury on all issues so triable.**

/s/ Thomas A. Mauro, Esq.
Thomas A. Mauro, Esq. (Fed. Bar No. 07139)
MAURO LAW OFFICES, PC
700 Pennsylvania Avenue, S.E., Suite 200
Washington, DC  20003
(202) 452-9865
tmauro@tmaurolaw.com

/s/ Donald M. Temple, Esq.
Donald Temple, Esq. (Fed. Bar No. 09332)
2522 A Virginia Avenue, N.W.
Washington, D.C. 20037
(202) 628-1101
Dtemplelaw@gmail.com
*Co-counsel for Plaintiffs*